(No. 3500— )

EMMA S. McGUIRE, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 18, 1944.*

M. D. MORAHN, for claimant.

GEORGE F. BARRETT, Attorney General; WILLIAM L. MORGAN, Assistant Attorney General, for respondent.

CHIEF JUSTICE DAMRON delivered the opinion of the court:

This claimant was first employed at the Manteno State Hospital about October 1, 1935, as an attendant. She claims she became ill with typhoid fever on August 27 and 28, 1939, while on the premises of said hospital and went off duty at seven o'clock on the 28th. The record shows she had worked steadily prior thereto and was never ill before. She was treated by Dr. Ralph J. Major, of Grant Park, Illinois, until the 20th day of September, 1939, when he had her removed to the hospital on the grounds of said institution for the reason she had developed pneumonia. She remained in the hospital

until the 27th day of November of that year. She claims she has never been able to work since the attack.

She seeks an award for total permanent disability and a pension for life, and seeks payment in the sum of $301.29 expended by her for doctors, nursing bills, drugs, etc.

The record consists of the complaint, testimony, abstract of same, stipulation dated January 14, 1941, report of Dr. Allyn, Waverly, Illinois, brief, statement and argument on behalf of claimant and respondent.

Evidence, both oral and written, was taken in support of the complaint.

Dr. Ralph J. Major, called as a witness on behalf of claimant, testified that he was the attending physician, that she came to his office during August, 1939, complaining of a cough and that he took a blood examination of claimant, which proved positive as to typhoid. He stated that the first time he saw her, her condition was good. He saw her the following week and her temperature had risen. He prescribed sulfanilamide tablets and on his next visit she was getting worse. This condition extended over a period of three or four weeks, then she developed pneumonia. He testified he saw her in his office twice and afterwards at her home, then he had her transferred to the Manteno State Hospital for treatments. He stated she had a severe case of pneumonia, that it was a complication of typhoid. He further testified that her system was weakened by the typhoid and that she was suffering from myocarditis or nephritis and that the typhoid fever so weakened her system that pneumonia followed.

By stipulation this claimant was examined by Dr. Paul Allyn, licensed physician and surgeon at Waverly, Morgan County, Illinois, to ascertain the present physical

condition of claimant. This was for the purpose of having said physician prepare a detailed report to be presented to this court as evidence in said cause. This examination of claimant was made on the 12th day of November, 1943. A portion of this report follows:

"Physical examination. She has the appearance of an old lady. Throat negative, teeth in bad state of decay, nose chronic rhinitis of the left nostril. Blood pressure 120-80, pulse sitting 100, after walking 30 feet pulse 120. Heart, some arrythmia and very irregular at this time. Under fluroscope heart appears to be enlarged at least ⅓ in size.

Lungs—numerous rales heard in both chests. Urine negative excepting a ring of albumen and strongly acid. She has arthritis of feet, (walks with difficulty) knees and spine. Urine and faeces specimen sent to Illinois State Laboratory were found to be negative for typhoid bacilli.

Diagnosis—Endocarditis, chronic, Nephritis and Arthritis of spine and limbs. Prognosis: Bad. In my opinion patient is totally and permanently disabled."

This court on its own motion had this claimant before it for the purpose of personal observation and interrogation.

We found on interrogation that as a result of her illness she was typed by the State of Illinois as a typhoid or para-typhoid fever carrier and under it she was restricted in her activities. She produced this agreement for the court. By this agreement she was permitted to mingle with the public at large and resume her usual occupation as hospital attendant but ordered not to handle food. In compliance with the request of the respondent she entered into an agreement that she would handle no food for persons other than members of her immediate family and to use the utmost care in her personal hygiene. She also agreed to submit specimens at the request of the local health department until she had been properly released according to the rules for the control of typhoid and para-typhoid fever. This court questioned her specifically in reference to this typhoid

carrier agreement and found that it depressed her. She was constantly conscious of it, and in the opinion of the court it accounted in part for her present subjective symptoms. She stated she had not performed any work since August, 1939, and did not pretend to do even her housework. She was morbid and felt that she was a useless member of society.

Compensation is payable under the provisions of the Workmen's Compensation Act for disability or death from typhoid fever if the disease was accidentally contracted by claimant during the course of the employment.

The record in this case leaves no doubt in the minds of this court that claimant contracted typhoid fever during the course of her employment by the State. Any disability suffered by her as a consequence of this extra hazard and risk to which she was exposed, and the injury arising therefrom, is compensable. The question then to be decided by this court is the nature and extent of her disability.

From a consideration of all the record and our personal observation of this claimant, we cannot agree that she is totally and permanently disabled. We do feel, however, that she has suffered disability by reason of her illness and we further find that there are many useful and lucrative occupations in which she could engage if she would make an attempt to do so. Her condition has aroused the sympathy of this court.

We find that this claimant is entitled to have and receive temporary total compensation from August 27, 1939, to the 12th day of May, 1944, being a period of 245 weeks, as provided in Section 8, paragraph b of the Workmen's Compensation Act, as amended. It is our considered opinion, and we so rule, that this claimant is

now able to pursue some gainful occupation and earn as much as she was able to earn prior to her illness.

We further find that the claimant and respondent were, on the 27th day of August, 1939, operating under the provisions of the Workmen's Compensation Act; that on the date last above mentioned said claimant sustained accidental injuries which did arise out of and in the course of the employment; and that notice of said accident was given said respondent and claim for compensation was made on said respondent within the time required under the provisions of said Act.

That the earnings of the claimant during the year next preceding the injury were $828.00, and that the average weekly wage was $15.92; that claimant had no children under sixteen years of age dependent upon her for support; that the necessary first aid, medical, surgical and hospital services have been provided by the respondent herein, and that her claim for additional medical services in the sum of $301.29, procured without the consent of the respondent, must be denied.

We further find that claimant is entitled to have and receive from the respondent for temporary total disability, the sum of $8.75 per week for a period of 245 weeks, totalling the sum of $2,143.75, and thereafter nothing. We find from the record that the claimant had been paid by the respondent subsequent to her injury the sum of $621.80 as salary for unproductive work, which must be deducted from the above award, leaving the sum of $1,521.95, all of which has accrued and is payable in a lump sum.

An award is therefore entered in favor of claimant and against the respondent in the sum of One Thousand Five Hundred Twenty-one Dollars and Ninety-five Cents ($1,521.95).

This award is subject to the approval of the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."

Dated at Springfield, Illinois, this 12th day of May, A. D. 1944.